# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MONTE L. HANEY,
          *Petitioner-Appellant,*

v.

DERRAL G. ADAMS, Warden,
          *Respondent-Appellee.*

No. 09-16148

D.C. No.
3:07-cv-04682-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Submitted April 12, 2011*
San Francisco, California

Filed May 26, 2011

Before: Alfred T. Goodwin and N. Randy Smith,
Circuit Judges, and Raner C. Collins, District Judge.**

Opinion by Judge N.R. Smith

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

** The Honorable Raner C. Collins, District Judge for the U.S. District Court for Arizona, Tucson, sitting by designation.

COUNSEL

Monte L. Haney, *pro se*, Represa, California, for the petitioner-appellant.

Michele J. Swanson, Deputy Attorney General, San Francisco, California, for the respondent-appellee..

OPINION

N.R. SMITH, Circuit Judge:

In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." We now hold that a petitioner may not raise a *Batson* claim in his habeas petition if the petitioner failed to object to the prosecution's use of peremptory challenges at trial. We must, therefore, affirm the judgment of the district court denying this petitioner's petition for habeas corpus.[1]

---

[1]Although Haney raises two uncertified issues on appeal, he has not "demonstrate[d] that reasonable jurists would find the district court's

## FACTS AND PROCEDURAL HISTORY

In 2005, Monte L. Haney, an African American, was tried and convicted of aggravated mayhem, torture, assault by means of force likely to produce great bodily injury, assault with a deadly weapon, corporal injury on a cohabitant, and criminal threats. During voir dire examination, the prosecutor used peremptory challenges to remove nine potential jurors. Haney did not object to any of these nine challenges during his trial. The jury ultimately consisted of a mixture of Asian, white, and Hispanic jurors, but no African Americans were chosen.

Haney appealed his convictions to the California Court of Appeal in 2006, which affirmed the convictions. He did not raise a *Batson* claim during this direct appeal.[2] The California Supreme Court denied his petition for review.

In 2007, Haney filed a petition for habeas corpus with the California Supreme Court alleging ineffective assistance of counsel, prosecutorial misconduct, incorrect jury instructions, and a *Batson* violation. In claiming a *Batson* violation, he alleged that two of the potential jurors struck by the prosecution were African American. The California Supreme Court denied the petition for habeas corpus without an opinion.[3]

---

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because he has not made "a substantial showing of the denial of a constitutional right," we decline to issue a certificate of appealability for the uncertified issues. *Id.*

[2]In his subsequent petition for state habeas, Haney alleged he raised the *Batson* claim on appeal, but also argued that "on appeal I wanted to raise the issue that I did not have any [A]frican [A]mericans on my jury and my appellate attorney told me that it was irrelevant." The California Court of Appeal did not mention a *Batson* claim, indicating that the claim was not raised. Regardless, our opinion rests on Haney's failure to object during voir dire, not on appeal.

[3]Denials of habeas corpus petitions without opinion by the California Supreme Court are decisions on the merits, and satisfy the exhaustion

Haney then filed his federal habeas petition in the United States District Court for Northern California alleging his *Batson* claim and other grounds not relevant here. The district court also denied his petition. It rejected the *Batson* claim on two grounds: (1) the claim was not raised at the trial court, and (2) it failed on the merits, because Haney could not show purposeful discrimination. Instead, the record revealed legitimate reasons for striking all nine potential jurors, regardless of race.

## Standard of Review

We review the district court's denial of a habeas corpus petition *de novo*. *Ali v. Hickman*, 584 F.3d 1174, 1181 (9th Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), we may only grant the habeas petition if the last reasoned state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). " '[C]learly established Federal law' under § 2254(d)(1)" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citation omitted).

However, because Haney (1) did not raise the *Batson* issue on direct appeal, and (2) his state habeas petition was denied without opinion, there is no reasoned state court opinion to review here. We must, therefore, "perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable." *Pinholster v. Ayers*, 590

---

requirement in 28 U.S.C. § 2254(b)(1)(A). *See Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992); *Harris v. Superior Court*, 500 F.2d 1124, 1128-29 (9th Cir. 1974) (en banc). Therefore, although Haney did not raise the Batson claim on direct appeal, he " 'fairly presented' his federal claim to the highest state court" and we may review it. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citation omitted).

F.3d 651, 663 (9th Cir. 2009) (en banc), *reversed on other grounds sub nom. Cullen v. Pinholster*, 131 S. Ct. 1388 (2011) (internal quotation marks and citation omitted). This is not *de novo* review of the constitutional issue, but only a means to determine whether the "state court decision is objectively unreasonable." *Id.* Therefore, for this appeal, Haney must show that "there was no reasonable basis" for the state court's ruling. *Cullen*, 131 S. Ct. at 1402. "A habeas court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* (alterations and citation omitted).

### Contemporaneous Objection

**[1]** The state court may have denied Haney's *Batson* claim because he failed to object to the use of peremptory challenges during voir dire or at any point during the trial.[4] This presents an issue of first impression in this circuit: Whether the state court's decision to deny a *Batson* claim when a defendant made no contemporaneous objection to the use of peremptory challenges in the trial court is contrary to, or an unreasonable application of, clearly established federal law.[5]

---

[4]Because the denial of his claim was on the merits, rather than state procedural grounds, the "cause and prejudice" analysis in *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) is inapplicable.

[5]We have previously held that an objection "must be made as soon as possible, and preferably before the jury is sworn" in federal criminal cases, but on direct appeal we may review the claim for plain error. *United States v. Contreras-Contreras*, 83 F.3d 1103, 1104 (9th Cir. 1996); *see also* Fed. R. Crim. P. 52(b). However, although Federal Rule of Criminal Procedure 52(b) plain error review applies to federal criminal cases, it does not apply to either the state proceedings or habeas petitions. Accordingly, we have implied that an objection must be made in order to preserve a *Batson* claim in a habeas case. *See Boyd v. Newland*, 467 F.3d 1139, 1142 n.2 (9th Cir. 2006) ("A *Wheeler* motion serves as an implicit objec-

The Supreme Court has never allowed a *Batson* challenge to be raised on appeal or on collateral attack, if no objection was made during jury selection. Indeed, as explained below, *Batson* itself presupposes a timely objection. *Ford v. Georgia*, 498 U.S. 411, 423 (1991) held that states may adopt rules for determining whether a *Batson* objection is timely, but did not address whether failure to timely object barred a habeas claim. Therefore, the state court's habeas decision was not "contrary to" clearly established federal law. Furthermore, we join other circuits which have considered this issue in holding that an objection at trial is a prerequisite to a *Batson* challenge for purposes of habeas review.[6] Accordingly, we hold that the state court's habeas decision was not "an unreasonable application" of the law clearly established in *Batson*.

**[2]** Under *Batson*, a defendant who alleges the discriminatory use of peremptory challenges must first make out a prima facie case. He must show: (1) "that he is a member of a cognizable racial group," (2) "that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race," and (3) "that these facts and any other relevant circumstances raise an inference" of intentional discrimination. 476 U.S. at 96. The burden then shifts to the prosecutor to provide a race-neutral explanation for the chal-

---

tion under *Batson*, so Petitioner preserved his federal constitutional claim." (internal citation omitted)). We have also required contemporaneous objections in civil cases. *See Dias v. Sky Chefs, Inc.*, 948 F.2d 532, 534-35 (9th Cir. 1991) (refusing to consider *Batson* claim when no objection was made before the jury was sworn).

[6]*McCrory v. Henderson*, 82 F.3d 1243, 1247 (2d Cir. 1996); *Abu-Jamal v. Horn*, 520 F.3d 272 (3d Cir. 2008), *vacated on other grounds by Beard v. Abu-Jamal*, 130 S. Ct. 1134 (2010); *Allen v. Lee*, 366 F.3d 319, 327-28 (4th Cir. 2004); *Thomas v. Moore*, 866 F.2d 803, 804 (5th Cir. 1989); *Carter v. Hopkins*, 151 F.3d 872, 875-76 (8th Cir. 1998) (refusing to apply burden-shifting when no contemporaneous objection); *Sledd v. McKune*, 71 F.3d 797, 799 (10th Cir. 1995) (refusing to consider *Batson* claim without an objection because there was no record to review).

lenges. *Id.* at 97. This process presupposes that the defendant made a timely objection to the challenges during voir dire, as Batson had done, *id.* at 83, 100. The Court did not expressly require, however, that the defendant make such an objection in order to preserve the claim.

**[3]** The Supreme Court's established three-step *Batson* procedure supports reading *Batson* to require a contemporaneous objection at trial. At step one, the Court emphasized that "the trial court should consider all relevant circumstances" in determining whether defendant had made out a prima facie case. *Id.* at 96. At step two, "race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's first-hand observations of even greater importance." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). "Because challenges are often based on such subtle, intangible impressions, the reasons for exercising the challenges may be quite difficult to remember if an objection is not raised promptly." *McCrory*, 82 F.3d at 1248. Finally, "when determining whether the prosecutor's race-neutral explanations are credible, 'the best evidence often will be the demeanor of the attorney who exercises the challenge.' " *Abu-Jamal*, 520 F.3d at 282 n.6 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003))*; see also Thomas*, 866 F.2d at 805 ("Determining whether a prosecutor has acted discriminatorily in his use of a peremptory challenge depends greatly upon the observations of the presiding judge.").

These determinations not only lie "peculiarly within a trial judge's province," *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (citation omitted), they would also be difficult, if not impossible, to evaluate for the first time in post-conviction proceedings when no record is preserved. *See Jones v. Butler*, 864 F.2d 348, 370 (5th Cir. 1988) ("Years after trial, the prosecutor cannot adequately reconstruct his reasons for striking a venireman. Nor can the judge recall whether he believed a potential juror's statement that any alleged biases would not prevent him from being a fair and impartial juror."); *see also*

*McCrory*,[7] 82 F.3d at 1250 (reversing the district court's grant of habeas relief where the State was unable to meet its burden under *Batson* "simply because the prosecutor was understandably unable at the hearing, 10 years after trial, to explain his challenges. Accordingly, the conviction was vacated for a violation that may never have occurred."). In this case, for example, it is impossible to even ascertain which members of the venire were African American. *See United States v. Dobynes*, 905 F.2d 1192, 1197 & n. 4 (3d Cir. 1990) (noting that even though the court reviewed the untimely *Batson* claim for plain error on direct appeal, the lack of a record made it impossible to even ascertain how many African Americans were on the venire). Although this problem exists even on direct appeal, it is exacerbated by the often lengthy delays between trial and a federal habeas petition. *See, e.g.*, *Galarza v. Keane*, 252 F.3d 630, 641 (2d Cir. 2001) (11 years); *McCrory*, 82 F.3d at 1250 (10 years).

Similarly, the Supreme Court's proposed remedies for *Batson* violations presuppose a contemporaneous objection. The Supreme Court declined "to formulate particular procedures to be followed upon a defendant's *timely objection* to a prosecutor's challenges." *Batson*, 476 U.S. at 99 (emphasis added). However, the Court theorized that, after a finding of intentional discrimination, trial courts could choose to "discharge the venire and select a new jury from a panel not previously associated with the case" or "disallow the discriminatory challenges and resume selection with the improperly challenged

---

[7]In *McCrory* and *Jones*, the Second and Fifth Circuits required a contemporaneous objection even though the cases were tried prior to the *Batson* decision, when defendants were required to show a pattern of discrimination under *Swain v. Alabama*, 380 U.S. 202, 223-24 (1965). In Haney's case, there was a clear body of law concerning peremptory challenges to inform his counsel's decision whether to raise a *Batson* claim. Additionally, Haney's counsel was aware of *Batson*—in a pretrial conference the parties agreed to raise any *Batson* claims in a sidebar. Accordingly, it is even more appropriate to require a contemporaneous objection in this case.

jurors reinstated on the venire." *Id.* at 99 n.24. Neither option would be viable if struck members of the panel had been dismissed, or the case had already gone to a jury. *See Abu-Jamal*, 520 F.3d at 282 & n.8; *McCrory*, 82 F.3d at 1247; *Jones*, 864 F.2d at 370 ("[A]ny prosecutorial misconduct is easily remedied before trial simply by seating the wrongfully struck venireman. After trial, the only remedy is setting aside the conviction.").

**[4]** Aside from these procedural issues, it would also be unwise to allow defendants "to manipulate the [trial] system to the extreme prejudice of the prosecution" by allowing post-conviction *Batson* claims. *McCrory*, 82 F.3d at 1247. A defendant would have a strong incentive to allow the trial to proceed with the selected jury, then—in the event of a conviction—raise the *Batson* claim on appeal, long after the prosecutor may have forgotten the reasons for his challenges. *Id.*; *see also Galarza*, 252 F.3d at 641 (Walker, J., dissenting) ("In addition to allowing the trial court to act in the first instance, potentially correcting the error and obviating the need for an expensive, time-consuming, and disruptive appeal, timely objection provides a record from which appellate courts can better assess the trial court's reasoning, discourages sandbagging and strategic behavior by trial counsel, and provides the prevailing party with notice of the objector's claims of error.").

**[5]** For these reasons, we join our sister circuits in concluding that a timely objection to the prosecutor's use of peremptory challenges is a prerequisite to a *Batson* challenge. Therefore, the California Supreme Court's decision denying Haney's *Batson* claim was not contrary to federal law.

The district court's judgment denying habeas is AFFIRMED.